IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RYDEX TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BAXTER INTERNATIONAL, INC.,<br><br>Defendant. | C.A. No. 13-664-RGA |
| RYDEX TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CAREFUSION CORPORATION,<br><br>Defendant. | C.A. No. 13-665-RGA |
| RYDEX TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>HAEMONETICS CORPORATION,<br><br>Defendant. | C.A. No. 13-667-RGA |
| RYDEX TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>HOSPIRA, INC.,<br><br>Defendant. | C.A. No. 13-668-RGA |

# MEMORANDUM OPINION

Timothy Devlin, Esq. (argued), The Devlin Law Firm, Wilmington, DE; Xiyan Shang, Esq., The Devlin Law Firm, Wilmington, DE; Attorneys for Plaintiff.


Philip A. Rovner, Esq. (argued), Potter, Anderson & Corroon LLP, Wilmington, DE; Jonathan A. Choa, Esq., Potter, Anderson & Corroon LLP, Wilmington, DE; Alan R. Silverstein, Esq., Potter, Anderson & Corroon LLP, Wilmington, DE; Mary Matterer, Esq., Morris James LLP, Wilmington, DE; Benjamin J. Bradford (argued), Esq., Jenner Block LLP, Chicago, IL; Rodger D. Smith, II, Esq., Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE; Christopher L. McArdle, Esq. (argued), Alston & Bird LLP, New York, NY; Deepro Mukerjee, Esq., Alston & Bird LLP, New York, NY; Denise S. Kraft, Esq., DLA Piper LLP, Wilmington, DE; Richard T. Mulloy, Esq. (argued), DLA Piper LLP, San Diego, CA; Attorneys for Defendants.

May 15, 2015

ANDREWS, U.S. DISTRICT JUDGE:

Plaintiff asserts that Defendants' medical devices infringe U.S. Patent No. 5,913,180 ("the '180 patent"). The patented technology broadly relates to a nozzle that controls the delivery of fluid to a fluid container, exchanging information between the fluid container and a delivery system. *See* '180 patent at 1:5-26. The patent generally directs itself to fuel delivery for vehicles. *See, e.g.,* '180 patent at Abstract ("A fluid delivery nozzle for wireless communication to either an active or a passive device located on a vehicle..."). Figure 1 of the patent plainly refers to a vehicle and trailers. The patent, however, does acknowledge that the technology can be used for other fluid delivery systems outside of the liquid petroleum context. '180 patent at 21:46-51 ("The preferred embodiment described herein is a liquid petroleum fuel delivery system. The invention can, of course, be used with a delivery system for any fluid, such as water, compressed gases, pharmaceuticals via intravenous injection, ammonia, solvents, engine oil, transmission fluid, paint, beverages, herbicides and pesticides, and so on."). Similarly, the specification offers that the invention can be used with any fluid container. '180 patent at 4:41-44 ("While the detailed description references a truck tractor 12, it should be noted that any fluid container, such as a beer keg, herbicide drum, or paint canister, may be used in the present invention.").

The parties agreed to stay the case pending the resolution of Defendants' motion for summary judgment, and the Court granted leave to file Defendants' motion for non-infringement and construction of particular claim terms. (D.I. 45, 46). The parties ask the Court to construe two terms of the '180 patent, "fluid container" and "nozzle," and Defendants argue that a construction of these terms demonstrates that the accused products do not infringe, which

3

Plaintiff disputes. (D.I. 48, 54). The Court has considered the parties' briefing (D.I. 48, 54, 59, 62) and held a hearing on the issues. (D.I. 75).

## I. LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415 F.3d at 1324). When construing patent claims, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotation marks and citations omitted).

"[T]he words of a claim are generally given their ordinary and customary meaning. . . . [Which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312–13 (internal quotation marks and citations omitted). "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim

4

construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314 (internal citations omitted).

When a court relies solely upon the intrinsic evidence—the patent claims, the specification, and the prosecution history—the court's construction is a determination of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). The court may also make factual findings based upon consideration of extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317–19 (internal quotation marks and citations omitted). Extrinsic evidence may assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art, and how the invention works. *Id.* Extrinsic evidence, however, is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

"A claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (internal quotation marks and citation omitted).

## II. CONSTRUCTION OF DISPUTED TERMS

Claim 4 of the '180 patent is representative:

> A fluid delivery *nozzle* for delivering fluid from a fluid delivery device to a *fluid container* and for communicating information regarding a fluid delivery transaction to a remote device, said fluid delivery *nozzle* comprising:
>
> (a) a *nozzle* capable of controlling a flow of a fluid from a fluid delivery device to a *fluid container*;

5

(b) input means provided on said *nozzle* for allowing information regarding the fluid delivery transaction to be inputted into said *nozzle*;

(c) display means provided on said *nozzle* for allowing information regarding said fluid delivery transaction to be displayed on said *nozzle*;

(d) an information storage and retrieval device operably coupled to said *nozzle*;

(e) a radio operably coupled to the *nozzle* input means for transmitting information regarding the fluid delivery transaction; and

(f) receiving means coupled to said display means for receiving fluid delivery information regarding the fluid delivery transaction.

('180 patent, claim 4) (relevant terms italicized).[1]

### A. "fluid container"

*Plaintiff's proposed construction*: ordinary meaning

*Defendants' proposed construction*: "reservoir for storing fluid"

*Court's construction*: "receptacle for storing fluid"

In their motion for summary judgment, Defendants argue sensibly that a "fluid container" cannot include a human body, and that the Court does not need to formally construe this term. (D.I. 48 at p. 7). Defendants further argue that if the Court chooses to construe the term, it should be "reservoir for storing fluid," which also does not cover a human body. (D.I. 48 at p. 7). Defendants argue that the plain meaning of the term "fluid container" does not cover a human body and that the patent does not expand the ordinary scope of fluid container to cover the human body. (D.I. 48 at pp. 8-9). Plaintiff contends that "fluid container" is not a limitation

---

[1] Per an ex parte reexamination certificate issued on April 26, 2011, claim 4 of the '180 patent was amended from the version in the original patent. This is the amended version.

6

as it appears in the preamble, or in the first element of the body of each claim, and that even if the term needs to be construed, it should be construed broadly to cover a human body.

### 1. The Fluid Container in the Preamble

Plaintiff argues that the term "fluid container" is not part of the claimed structure because "fluid container" appears in the preamble, which Plaintiff says is not limiting in this case. (D.I. 54 at pp.6-7). While a preamble can provide limits if it recites essential steps of an invention, it is normally not limiting where it only states the purpose of the invention. *See Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) ("In general, a preamble limits the invention if it recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim. Conversely, a preamble is not limiting where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention.") (internal quotation marks omitted). In the present matter, the term does appear in the preambles of the asserted independent claims 4, 8, and 18, but Plaintiff is correct that the claim body defines a structurally complete invention, with the preamble only stating the purpose of the invention, which among other things, delivers fluid from a fluid delivery device to a fluid container. (D.I. 54 at 7). Therefore, it would appear that the preamble is not limiting.

### 2. Fluid Container in the Patent Claims

Even if "fluid container" in the preamble is not limiting, it still appears in the first element of each of the asserted claims, providing a limitation. *See, e.g.*, '180 patent at claim 4. ("a nozzle capable of controlling a flow of a fluid from a fluid delivery device to a fluid container"). Plaintiff notes that "fluid container" appears in the first element of each claim but then argues the term refers only to the "capability of the nozzle," not the claimed structure. (D.I.

7

54 at p. 7 ("The test for infringement is whether the nozzle is 'capable' of delivering fluid to a fluid container, not the identity of a particular container receiving the fluid." (citations omitted)). In the context of infringement, the Federal Circuit has said that "[a]s we have cautioned, in every infringement analysis, the language of the claims, as well as the nature of the accused product, dictates whether an infringement has occurred. Accordingly, we have held that, to infringe a claim that recites capability and not actual operation, an accused device need only be capable of operating in the described mode." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010) (citations omitted) (internal quotation marks omitted). Similarly, with the present claims, the Court agrees with Plaintiff that, on the face of the claims, fluid container does not appear to be a limiting element because the nozzle must only be capable of controlling liquid flow from a fluid delivery device to a fluid container. Therefore, on the face of only the claim language, the claim's nozzle must be capable of controlling fluid delivery to a fluid container but still might not actually always require a fluid container.

But the claims must be read within their proper context, including the specification, which is "always highly relevant" and "[u]sually ... dispositive." *Phillips*, 415 F.3d at 1315. The '180 patent's specification unequivocally requires a fluid container. *See, e.g.*, '180 Patent at 1:7-12 ("The present invention relates generally to a nozzle for controlling the delivery of fluid to a container or reservoir and, more specifically, to a nozzle for the exchange of security, identification, and transaction information between a container, such as a fuel or other fluid storage tank, and a fluid delivery system."). Similarly, the specification explains that "[i]n a preferred embodiment, a fluid container with an associated information storage and retrieval device is provided." '180 Patent at 1:58-60. In light of the repeated references to the fluid container in the specification, it is challenging to imagine how this patented invention would

8

function if the fluid container was not a required element, as Plaintiff argues. The Court, therefore, does not find Plaintiff's arguments about capability convincing when read within the context of the patent.

### 3. Disclaimer of Fluid Container as a Required Element

Even so, regardless of whether or not the fluid container term limits the claims, Plaintiff's position during reexamination of the patent has foreclosed such an argument. Statements made during prosecution history can disclaim arguments, or inform the meaning of claim language. *See Verizon Servs. Corp. v. Vonage Holdings Corp.,* 503 F.3d 1295, 1306 (Fed. Cir. 2007) ("We have held that a statement made by the patentee during prosecution history of a patent in the same family as the patent-in-suit can operate as a disclaimer."); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) ("the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be."). As Defendants point out, Plaintiff asserted during reexamination that "fluid container" was an element of the claims on several occasions. (D.I. 50-1 at 12 ("There are thus three critical elements of all of the claims under appeal: (1) a nozzle (2) that is in two-way wireless communication with a remote device and (3) that delivers fluid to a fluid container.") (emphasis in original)). Plaintiff cannot now argue that fluid container is not an element of the claims because that position has already been disclaimed, something Plaintiff benefited from during prosecution, to overcome concerns of obviousness under 35 U.S.C. §103(a). (*See* D.I. 50-1 at 9-15).

### 4. Disclaiming the Human Body in the Construction of Fluid Container

Defendants argue that Plaintiff already disclaimed the human body as a fluid container in the prosecution of a continuation application of the '180 patent, U.S. Patent Application No. 09/566,972 ("the '972 Application"). (*See* D.I. 48 at pp. 9-10). During prosecution, Plaintiff pursued a patent claim: "A method as defined in claim 100, wherein the fluid delivery device comprises a fluid dispenser for providing a fluid to a human subject wherein the fluid container comprises the human subject." (D.I. 53-1 at 50). As Defendants point out, the PTO rejected this claim in part because a "claim directed to or including within its scope a human being will not be considered to be patentable subject matter under 35 U.S.C. 101." (D.I. 53-2 at 8). Subsequently Plaintiff overcame this rejection by amending the claim to read: "A method as defined in claim 100, wherein the fluid delivery device~~s~~ ~~comprises a fluid dispenser~~ provide ~~for providing~~ a fluid to at least one human subject and wherein the fluid container devices are associated with ~~comprising the~~ at least one human subject." (D.I. 53-2 at 45) (emphasis in original). It would seem from this amendment that Defendants are correct. Plaintiff did disclaim "fluid container comprising the human subject," replacing it with fluid container devices that are "associated with at least one human subject." In the former, the human subject is the fluid container; in the latter, it is not. Fluid container, therefore, cannot include a human subject because Plaintiff has disclaimed that meaning. Plaintiff broadly attempts to distinguish the present claims from those in the '972 Application, but it is not easily discernible how the claims specifically differ in ways that matter. (D.I. 54 at p. 10).[2] *See Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1306 (Fed. Cir. 2007) ("We have held that a statement made by the patentee during

---

[2] Plaintiff points to another claim in the issued continuation patent, claim 22 of U.S. Patent No. 8,429,095, reciting "wherein the fluid delivery device dispenses fluid to a human subject." (D.I. 56-2 at 39). As Defendants note, "dispens[ing] fluid to a human subject" is not the same as saying "the human body comprises a fluid container." (D.I. 59 at p.4). Therefore, this evidence does not really rebut the disclaimer in the prosecution history.

10

prosecution history of a patent in the same family as the patent-in-suit can operate as a disclaimer."). Plaintiff has disclaimed the argument that fluid container can include a human body.

Defendants make other ancillary arguments, which are less compelling, but not necessary to resolve. Defendants say, for example, that another court already found that "fluid container" should be construed narrowly but bury in a footnote that this was for another patent, albeit by the same inventor for "very similar inventions." (D.I. 48 at p. 11 n.5). This argument is not convincing.

### 5. Construing Fluid Container to Include Human Body

Despite what Plaintiff argues, fluid container cannot under any ordinary meaning include a human body. Defendants note that containers typically are receptacles for something, in this case storing fluid such as a fuel storage tank. The Court agrees and construes the term as a "receptacle for storing fluid." Plaintiff is keeping its options open about what it would propose as a plain and ordinary meaning for the construction of "fluid container." It does not believe that there is any need to address the term because it does not consider it an element for infringement. (D.I. 54 at p. 12). Plaintiff, however, argues that a fluid container includes a human body, because "evidence from medical sources and from Rydex's expert establish that the human body and/or vascular system constitute a 'container'" as "evidence shows that the human body is more than 50% fluid." (D.I. 54 at p. 12). At the *Markman* hearing, Plaintiff's counsel argued that anything under the sun that is comprised of liquid counts as a fluid container:

> MR. DEVLIN: A human certainly is an example of a "fluid container."
> THE COURT: Is an animal an example of a "fluid container"?
> MR. DEVLIN: Yes.
> THE COURT: A plant?
> MR. DEVLIN: A plant?
> THE COURT: Yes.

11

>MR. DEVLIN: Well, so, I would probably guess yes at some level.
>THE COURT: Is a sponge a "fluid container"?
>MR. DEVLIN: I would think so, your Honor.
>THE COURT: Maybe the question is, what is not a "fluid container"?[3]

(D.I. 75 at 30).

Considering the term "fluid container" in the context of the patent claims and the specification, there is no plausible reading of fluid container that would cover the vascular system or the human body even if both contain fluid. A fluid container requires both fluid and a container. A fluid container must have a receptacle (or something similar) that can be used for the purpose of storing fluid. The ordinary understanding of a container would be a "receptacle, such as a carton, can, or jar, in which material is held or carried."[4] A "fluid container" is a subset of "containers" as some containers are not suitable for holding or carrying liquids. A fluid container is not merely any item that is comprised of some fluid. Members of the animal kingdom, even if comprised of some liquid, are not fluid containers as they are generally not used to store fluid, so are not containers. A baby koala may well be comprised of some fluid but cannot be a fluid container by itself. Rum raisin ice cream is not a fluid container. A turkey sandwich with mustard, which is comprised of some liquid, is not a fluid container. The list goes on. A human body is not a fluid container because it is not a receptacle used to hold, carry or store fluid—even if there is liquid in the body or vascular system.

Even though the patent generally directs itself to fuel delivery for vehicles, and therefore to fluid containers that are fuel containers, it is true that the patent contemplates other sorts of

---

[3] At the hearing, Plaintiff's counsel did not specifically identify what does not count as a fluid container. The Court suspects Plaintiff's position on the term, while unstated, is without bounds.
[4] The American Heritage Dictionary of the English Language (2009). The patent was filed in 1997, and appears to claim priority to 1995, but the ordinary understanding of container has not changed over that time.

12

fluid containers. '180 patent at 4:41-44 ("While the detailed description references a truck tractor 12, it should be noted that any fluid container, such as a beer keg, herbicide drum, or paint canister, may be used in the present invention."). A beer keg, an herbicide drum, and a paint can are functionally the same as a fuel container;[5] the human body is not. No person of ordinary skill in the art reading the patent would reasonably think that the human body is a fluid container within the meaning of the patent.

Finally, Defendants argue that claiming that fluid container covers a human body would run afoul of the patentable subject matter requirement of 35 U.S.C. §101 and the enablement requirement of 35 U.S.C. §112. Natural phenomena, including humans, are not patent eligible subject matter. *See Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013). The Court does not see a need to resolve these §101 and §112 arguments because it does not construe fluid container to include a human body.

For the above reasons, the Court finds that fluid container means "receptacle for storing fluid," which does not cover a human body or the vascular system, but does cover all of the examples in the specification and comport with the ordinary understanding of the term.

**B.** **"nozzle"**

*Plaintiff's proposed construction*: Ordinary meaning as set forth in dictionary definitions, e.g.: (a) a projecting vent of something; (b) a short tube with a taper or constriction used (as on a hose) to speed up or direct a flow of fluid, or (c) a part in a rocket engine that accelerates the exhaust gases from the combustion chamber to a high velocity.[6]

---

[5] The other examples in the specification are also consistent with the general understanding of a container as reflected in the dictionary definition.

[6] Part (c) is not a misprint. (D.I. 54 at p. 14).

13

*Defendants' proposed construction*: A spout connected to the end of a pipe, hose, or tube, used to dispense fluid, and that can be inserted into a fluid container

*Court's construction*: A spout capable of being connected to the end of a pipe, hose, or tube, used to dispense fluid, that can be inserted into a fluid container

Defendants argue that the '180 patent describes a nozzle as a standard fuel nozzle, similar to one commonly seen at gas stations, which is located at the end of a hose, and can be inserted into a fluid container. (D.I. 48 at pp. 15-16). Defendants also contend that Plaintiff's proposed construction is not grounded in the patent, and certainly cannot mean "a part in a rocket engine." (D.I. 48 at pp. 15-16). Plaintiff responds that Defendants unreasonably read characteristics of the patent's preferred embodiment into the construction, such as that the nozzle is a standard fuel nozzle, that it is located at the end of a hose, and that it can be inserted into a fluid container. (D.I. 54 at p. 14). Instead, Plaintiff states that the ordinary meaning of "nozzle" "encompasses a wide variety of components of various shapes and sizes" and that "[s]ome of those, like a rocket engine part, are of course not applicable here." (D.I. 54 at p. 15). Plaintiff's concession on the rocket engine point makes it unclear why it proposes a construction that is not applicable to the present claims.

Plaintiff is correct that Defendants cannot limit their construction only to the preferred embodiment, a fuel nozzle, because the specification does contemplate other possible uses, even if only mentioned in passing. *See, e.g.*, '180 patent at 21:46-51 ("The preferred embodiment described herein is a liquid petroleum fuel delivery system. The invention can, of course, be used with a delivery system for any fluid, such as water, compressed gases, pharmaceuticals via intravenous injection, ammonia, solvents, engine oil, transmission fluid, paint, beverages, herbicides and pesticides, and so on."). Even though the preferred embodiment may require a

14

fuel nozzle, that should not be required by the construction. It is not apparent, however, that Defendants are limiting the construction only to fuel nozzles.

However, the nozzle does require that it be capable of being connected to the end of a hose, tube or pipe, and be used to dispense fluid. It cannot merely be a projecting vent, one of the definitions offered by Plaintiff. The patent's specification clearly describes a nozzle as a dispenser of fluid. *See, e.g.*, '180 patent at 6:4-6 ("The nozzle 766 is connected to a fuel dispenser 764 by a hose 762 and is used to deliver fuel to the truck tractor 12 (FIG 6.)." Figure 6 unequivocally depicts a fuel dispenser connected by a hose to the nozzle. If Plaintiff's position were accepted, it is unclear how this invention would actually function. There must be some intermediate device to transport fluid from the fluid dispenser to the nozzle—whether or not that is a hose as described in the specification, or something else such as a pipe or a tube. Indeed, the patent claims themselves state that the nozzle must be capable of controlling the flow of fluid that passes between the fluid delivery device and the fluid container. *See, e.g.,* '180 patent, claim 4 ("a nozzle capable of controlling a flow of a fluid from a fluid delivery device to a fluid container"). Therefore, nozzle, read within the context of the patent, must be capable of being connected to an intermediary to transport fluid, such as a hose. Furthermore, the nozzle must be used to dispense fluid, as it is described as such in the specification and patent claims. *See, e.g.*, '180 patent at 6:4-6 ("[The nozzle] is used to deliver fuel to the truck tractor 12 (FIG 6.)."); *see also*, '180 patent at claim 4 ("A fluid delivery nozzle for delivering fluid from a fluid delivery device to a fluid container…"). The nozzle, therefore, must be used to dispense fluid, so Plaintiff's proposals to include "a projecting vent of something" as well as "a part in a rocket engine that accelerates the exhaust gases from the combustion chamber to a high velocity" are

15

misguided because they are too broad and do not capture the requirement that the nozzle actually be able to dispense fluid, which is crucial.

Similarly, the nozzle must be able to be inserted into the fluid container. The claims on their face require, at a minimum, that the nozzle serve as a conduit between the fluid delivery device and fluid container. *See, e.g.,* '180 patent, claim 4 ("A fluid delivery nozzle for delivering fluid from a fluid delivery device to a fluid container..."). Furthermore, the patent's specification makes numerous references to inserting the nozzle into a fluid container, and it is unclear how the invention could function otherwise because the nozzle must transport the fluid to the fluid container. *See, e.g.,* '180 patent at 6:6-8 ("The fuel nozzle 766 is inserted into a filler neck of a fuel tank (not shown) of the truck trailer 12 during the fueling operation"); *see also* '180 patent at 21:4-7 ("To begin fueling from the pump truck, the nozzle which dispenses the desired fluid is removed from the associated docking station 770 and placed within a filler neck of a fluid container (not shown)."). In order for the nozzle to deliver fluid to the fluid container, it must be inserted into the fluid container. Therefore, Plaintiff's construction is incorrect. Nozzle means "a spout capable of being connected to the end of a pipe, hose, or tube, used to dispense fluid, that can be inserted into a fluid container."

## III. CONCLUSION

Within five days the parties shall submit a proposed order consistent with this Memorandum Opinion suitable for submission to the jury.