IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RYDEX TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BAXTER INTERNATIONAL, INC.,<br><br>Defendant. | C.A. No. 13-664-RGA |
| RYDEX TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CAREFUSION CORPORATION,<br><br>Defendant. | C.A. No. 13-665-RGA |
| RYDEX TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>HAEMONETICS CORPORATION,<br><br>Defendant. | C.A. No. 13-667-RGA |
| RYDEX TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>HOSPIRA, INC.,<br><br>Defendant. | C.A. No. 13-668-RGA |

1

# MEMORANDUM OPINION

Timothy Devlin, Esq. (argued), The Devlin Law Firm, Wilmington, DE; Xiyan Shang, Esq., The Devlin Law Firm, Wilmington, DE; Attorneys for Plaintiff.

Philip A. Rovner, Esq. (argued), Potter, Anderson & Corroon LLP, Wilmington, DE; Jonathan A. Choa, Esq., Potter, Anderson & Corroon LLP, Wilmington, DE; Alan R. Silverstein, Esq., Potter, Anderson & Corroon LLP, Wilmington, DE; Mary Matterer, Esq., Morris James LLP, Wilmington, DE; Benjamin J. Bradford (argued), Esq., Jenner Block LLP, Chicago, IL; Rodger D. Smith, II, Esq., Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE; Christopher L. McArdle, Esq. (argued), Alston & Bird LLP, New York, NY; Deepro Mukerjee, Esq., Alston & Bird LLP, New York, NY; Denise S. Kraft, Esq., DLA Piper LLP, Wilmington, DE; Richard T. Mulloy, Esq. (argued), DLA Piper LLP, San Diego, CA; Attorneys for Defendants.

May 15, 2015

ANDREWS, UNITED STATES DISTRICT JUDGE:

Plaintiff asserts that Defendants' medical devices infringe U.S. Patent No. 5,913,180 ("the '180 patent"). The patented technology relates to a nozzle that controls the delivery of fluid to a fluid container, exchanging information between the fluid container and a delivery system. *See* '180 patent at 1:5-26. The patent specifically directs itself to fuel delivery for vehicles. *See, e.g.,* '180 patent at Abstract ("A fluid delivery nozzle for wireless communication to either an active or a passive device located on a vehicle..."). The patent contemplates using the technology for fluid delivery systems in other contexts. '180 patent at 21:46-51 ("The preferred embodiment described herein is a liquid petroleum fuel delivery system. The invention can, of course, be used with a delivery system for any fluid, such as water, compressed gases, pharmaceuticals via intravenous injection, ammonia, solvents, engine oil, transmission fluid, paint, beverages, herbicides and pesticides, and so on.").

The parties agreed to stay the case pending the resolution of Defendants' motion for summary judgment, and the Court granted leave to file Defendants' motion for non-infringement and construction of particular claim terms. (D.I. 45, 46).[1] The Court has considered the parties' briefing (D.I. 48, 54, 59, 62) and held a hearing on the issues. (D.I. 75). In a related *Markman* Opinion, this Court has construed two terms of the '180 patent, "fluid container" and "nozzle." The Court has construed fluid container as "receptacle for storing fluid." In the *Markman* Opinion, the Court determined that "fluid container" was a required element of the claims, something Plaintiff had disputed. The Court has construed nozzle as "a spout capable of being connected to the end of a pipe, hose, or tube, used to dispense fluid, and that can be inserted into a fluid container."

---

[1] All docket item citations are to the record in Case No. 13-664-RGA, unless otherwise indicated.

3

Defendants argue they should be granted summary judgment because Plaintiff relies in its infringement contentions upon a human body to satisfy the fluid container limitation. (D.I. 48 at p. 6).[2] In reliance on Plaintiff's infringement contentions, Defendants' Opening Brief only addresses infringement with respect to fluid container on the point that human bodies cannot be fluid containers. (*Id.* at pp. 6-14). Plaintiff argues in response that the vascular system is a fluid container even when construed as a "reservoir for storing fluid." (D.I. 54 at p. 13). Plaintiff adds a second theory that evidence demonstrates that the pump products operate during testing and calibration with fluid containers. (D.I. 54 at p. 13). Defendants respond with a waiver argument because the particular theory was not identified in Plaintiff's infringement contentions, but was first raised in Plaintiff's Brief. (D.I. 59 at p. 5). Plaintiff responds that the calibration/testing theory was not "new," but without any citations in support. (D.I. 62 at p. 3). The Court subsequently directed Plaintiff to identify where, if anywhere, its infringement theories had been made in its infringement contentions. (D.I. 76). Plaintiff did so. (D.I. 77).

Defendants argue that the medical devices do not include a nozzle because the accused pumping components do not include a spout at the end of a pipe, hose or tube, do not dispense fluid, and cannot be inserted into a fluid container. (D.I. 48 at p. 17). Plaintiff responds that even under Defendants' construction of nozzle, the limitation is met, "at least under the doctrine of equivalents." (D.I. 54 at p. 17). Defendants also argue that the accused products do not have "input means" or "display means" on the nozzle. (D.I. 48 at p. 19). In response to this argument, Plaintiff contends that Defendants are attempting to construe, narrowly and

---

[2] As Defendants note, Plaintiff has accused the human body of being a fluid container against Baxter, CareFusion and Hospira. Plaintiff has not accused the human body of being a fluid container against Haemonetics. (D.I. 48 at p. 6 n.2).

4

improperly, the terms "input means" and "display means" to require that they be physically on the nozzle. (D.I. 54 at pp. 18-20).

At the hearing, Plaintiff argued that even if the Court ruled against it on its claim construction points, particularly "fluid container," summary judgment would not be proper because the devices can operate with containers, especially during calibration tests. (D.I. 75 at 7). Similarly, Plaintiff argued that even if Defendants' products do not have literal nozzles, the products still meet the element under the doctrine of equivalents. (D.I. 75 at 7).

For the following reasons, Defendants' motion for summary judgment of noninfringement is **GRANTED** in part and **DENIED** in part.

I.  **Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving

party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–49. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

## II. Analysis

Plaintiff asserts claims 4, 5, 8, 18, 19, and 21 of the '180 Patent against Defendants. (D.I. 48 at p. 2). Claims 4, 8, and 18 are independent claims, while claim 5 is dependent on claim 4, and claims 19 and 21 are dependent on claim 18. Claim 4 of the '180 patent is representative:

> A fluid delivery *nozzle* for delivering fluid from a fluid delivery device to a *fluid container* and for communicating information regarding a fluid delivery transaction to a remote device, said fluid delivery *nozzle* comprising:
>
> (a) a *nozzle* capable of controlling a flow of a fluid from a fluid delivery device to a *fluid container*;
>
> (b) input means provided on said *nozzle* for allowing information regarding the fluid delivery transaction to be inputted into said *nozzle*;

6

(c) display means provided on said *nozzle* for allowing information regarding said fluid delivery transaction to be displayed on said *nozzle*;

(d) an information storage and retrieval device operably coupled to said *nozzle*;

(e) a radio operably coupled to the *nozzle* input means for transmitting information regarding the fluid delivery transaction; and

(f) receiving means coupled to said display means for receiving fluid delivery information regarding the fluid delivery transaction.

('180 patent, claim 4) (relevant terms italicized).[3]

Each asserted independent claim contains the limitation of "a nozzle capable of controlling a flow of a fluid from a fluid delivery device to a fluid container." ('180 patent claim 4, 8, 18). Each asserted independent claim also contains a limitation related to an input (or keypad) and display on the nozzle for information related to the fluid delivery transaction. (*Id.*). For purposes of this summary judgment motion, therefore, the analysis of the issues holds for the three asserted independent claims, and, therefore, also for the three asserted dependent claims.

## A. Accused Products

Plaintiff accuses Baxter's SIGMA Spectrum Wireless Smart Pump ("Baxter's Pump"), CareFusion's Alaris System ("CareFusion's System"), Haemonetics's PCS2 Plasma Collection System ("Haemonetics's System"), and Hospira's Plum A+ Infusion System and Symbiq Infusion System ("Hospira's Systems"). (D.I. 48 at 5). Broadly, all of the devices relate to the delivery of intravenous fluids to patients, contain some mechanism to control that flow, and possess a display and some input device to monitor and adjust settings.

---

[3] Per an ex parte reexamination certificate issued on April 26, 2011, claim 4 of the '180 patent was amended from the version in the original patent. This is the amended version.

Baxter's Pump controls the administration of intravenous fluids, including "pharmaceutical drugs, blood, blood products, and mixtures of required patient therapy." (D.I. 48 at p. 4; D.I. 52-2 at 8). Baxter's Pump controls the flow of fluid from IV bags into patients, including a keypad and corresponding visual screen as part of the pumping apparatus. (*See* D.I. 52-2 at 22, D.I. 52-3 at 19-21). Similarly, CareFusion's System provides "accurate, automated infusion of a broad range of fluids, medications and blood products" to patients for use in the healthcare and hospital context. (D.I. 52-4 at 30). The product delivers fluid intravenously through intravenous tubing, allowing monitoring capabilities through a PC or module. (D.I. 52-5 at 2-7). Haemonetics's System allows the collection of blood plasma from patients, the selective removal of specific components, and the return of certain components to a donor or patients. (D.I. 52-6 at 49-50). When collecting blood from a donor, the device has a valve that remains open to direct plasma through tubing, and that valve is closed when saline is returned to the donor. (D.I. 48 at p. 5; D.I. 52-6 at 64-66). A display screen and keys to control the device are located on a control panel that is separate from the tubing and plasma valve. (*Id.*). Finally, Hospira's Systems are also used in health care contexts to deliver drugs and fluid to patients. (D.I. 48 at pp. 5-6; D.I. 52-7 at 3). Hospira's devices' infuser includes a pumping chamber that during an infusion cycle forces fluid through an IV tube and into a patient. (*Id.*). On each infuser is an LCD screen and keypad to control the system, including starting and stopping infusions and displaying various notifications or rates related to dosage or infusion. (*Id.*).

### B. Fluid Container Limitation

#### 1. Infringement Theory Related to Human Bodies

In the related *Markman* Opinion, the Court construed fluid container as "receptacle for storing fluid." In that opinion, the Court determined that fluid container does not include the

8

human body or the vascular system, and the Court also addressed Plaintiff's arguments that the term was not limiting, finding that fluid container was indeed a required element of the patent claims.

"An infringement issue is properly decided upon summary judgment when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001). To satisfy the doctrine of equivalents, the accused product must contain elements equivalent to those claimed in the patent, or perform "substantially the same function in substantially the same way to obtain the same result." *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1338 (Fed. Cir. 2011).

Plaintiff has identified the fluid container as the downstream destination in the Baxter, CareFusion and Hospira products, in its words, "a patient during normal operation, or a separate container during testing/calibration." (D.I. 54 at p. 5). The Court is left to surmise what the fluid container is in the Haemonetics product with respect to this argument. (*See id.*).[4] Because the Court has already held that a fluid container cannot be a human body, summary judgment is granted on all asserted claims with respect to the literal infringement theory that the human body is a fluid container.

The related doctrine of equivalents theory must also fail. At the hearing, Defendants argued that Plaintiff's infringement contentions did not allege a doctrine of equivalents theory for the fluid container limitation. (D.I. 75 at 61). In a letter to the Court, Plaintiff offers that the

---

[4] In his expert report, Dr. Rice writes: "It is my understanding that Haemonetics is not contesting the term 'fluid container' so I will not address that issue here." (D.I. 58-1 at 74 ¶ 194). Plaintiff's fluid container contention against Haemonetics is that the plasma collection bag is a fluid container. (D.I. 77-1 at p. 6).

9

infringement contentions address the doctrine of equivalents for the term "a nozzle capable of controlling a flow of a fluid from a fluid delivery device to a fluid container." (D.I. 77 at 1). Even though the doctrine of equivalents contention addresses a broader term, not simply "fluid container," the Court accepts without deciding that Plaintiff has addressed this argument in its infringement contentions.

In the summary judgment briefing, Defendants argue that a human body cannot meet the fluid container limitation under the doctrine of equivalents because it does not perform substantially the same function in the same way with the same result as a fluid container. (D.I. 48 at 14). Plaintiff does not respond to this doctrine of equivalents issue in its Opposition and Sur-Reply briefs. (*See* D.I. 54, 62). Plaintiff's expert Dr. James Rice, however, does offer a conclusory doctrine of equivalents argument for the fluid container limitation. (*See* D.I. 58-1 at 5 ¶ 16). Burying this theory in an expert declaration, not in response to Defendant's briefing, might be a waiver even if the theory were fully set forth in the declaration.[5] Dr. Rice, however, sets forth no analysis at all in his declaration to support a doctrine of equivalents argument. (*See, e.g.*, D.I. 58-1 at 12 ¶¶ 33-36). The doctrine of equivalents argument is therefore waived.

In any event, Plaintiff's doctrine of equivalents theory must fail because the function of a human body is not to store or receive fluid. A human body is not the equivalent of a receptacle for storing fluid because it does not provide substantially the same function as a container for liquid. A human body does not obtain the same result as a receptacle used to store fluid, and it certainly does not function the same way as a container such as a beaker used to house fluid would.

---

[5] *See* Fed. R. Civ. P. 56(c)(3) & (e)(2).

10

Therefore, as the argument has been waived and is also meritless, summary judgment is granted on the doctrine of equivalents theory for the human body.

## 2. Infringement Theory Based on Testing Theories

One of Plaintiff's theories is that each of the accused products operates during testing or calibration with containers. (D.I. 54 at p. 13). With Baxter's Pump, Plaintiff points to a service manual which outlines how the product's flow rate can be tested using a collection vessel. (D.I. 54 at p. 13; D.I. 56-4 at 16). For CareFusion's System, Plaintiff cites the product's user manual, which describes configuration testing that uses a fluid receptacle. (D.I. 54 at p. 13; D.I. 56-5 at 12). With Hospira's Systems, Plaintiff identifies service manuals, which outline testing procedures that use collection containers and a graduated cylinder. (D.I. 54 at p. 13; D.I. 56-6 at 2-9; D.I. 58-1 at 10 ¶ 28). Plaintiff does not appear to identify a testing theory against Haemonetics's System.[6] Defendants have responded that this infringement theory is procedurally improper because it was first brought up in the opposition briefing, and was not included in the infringement contentions. (D.I. 59 at pp. 5-6; D.I. 79 at 24-25).[7]

The case currently occupies an unusual procedural posture. Pursuant to the scheduling order, Defendants sought permission to file a motion for summary judgment of noninfringement prior to the dates listed in that original scheduling order. (*See* D.I. 15 at 9). The parties stipulated to a request for early summary judgment, which was granted by the Court, agreeing

---

[6] Haemonetics's products are different. Plaintiff does not contend that the human body meets the fluid container limitation in the Haemonetics System. Instead, Plaintiff contends that the plasma collection bag is a fluid container. (D.I. 77-1 at p. 6). Plaintiff does not raise the testing argument with Haemonetics's System in the briefing. (*See* D.I. 54 at p. 13).

[7] In a letter to the Court, Plaintiff confirmed that the first time it raised this theory was in the summary judgment briefing, and not in its infringement contentions. (D.I. 77 at 1).

11

that "resolution of the issues raised in Defendants' request will assist the efficient resolution of this matter." (D.I. 45 at 2). That stipulation recites that Plaintiff previously served its infringement contentions on April 30, 2014, and that the Court would stay all other proceedings and deadlines. (*Id.*). The stipulation for early summary judgment also states that "[i]f Rydex believes it requires any discovery related to any Defendant in response to any motion or portion of motion, the parties shall promptly confer regarding such discovery and seek to resolve any issues, and shall utilize their best efforts to complete any such discovery so as not to disturb the briefing schedule set forth above." (*Id.* at 3).

The stipulation for early summary judgment appears to presuppose the filing of proper infringement contentions. The stipulation seems to assume that the issues to be addressed in the summary judgment briefing would be defined by the theories raised. On April 30, 2014, Plaintiff served its infringement contentions on Defendants. (D.I. 45 at 2; D.I. 59 at p. 5). Defendants filed their motion for summary judgment more than four months later. (D.I. 47). Therefore, it is understandable that Defendants may feel blindsided by infringement theories first seen in Plaintiff's answering brief.[8]

Plaintiff broadly argues that it agreed to the filing of early summary judgment well before discovery and expert reports. At the oral argument, Plaintiff stated that "I think because the case was stayed, we didn't – and because of the procedural process we were in, we did not procedurally go through a mechanism of seeking to amend the contentions," adding that it could amend the contentions if the Court requested. (D.I. 79 at 54-56). In a letter to the Court,

---

[8] Defendants cite a number of cases for support to barring the new infringement theory because it was not made in the infringement contentions and because Plaintiff has not amended them. (D.I. 59 at p. 5). However, the Court does not believe that the cases are particularly helpful because this procedural posture, including the early summary judgment briefing, is unusual.

12

Plaintiff also stated that, in the infringement contentions, Plaintiff reserved its rights to amend its contentions regarding the doctrine of equivalents based on claim construction and other developments. (D.I. 77 at 1).[9]

While it is a close call, the Court will not grant summary judgment on this issue because Plaintiff has offered sufficient evidence that testing uses fluid containers that meet the construction of the term. Plaintiff's failure to include this theory in its infringement contentions was deficient, but under the circumstances, not so inexcusably deficient that the Court will consider the argument waived. The case was stayed near the beginning to allow for the early summary judgment motion. Had the case proceeded as outlined in the original scheduling order, Plaintiff would have had ample opportunity to amend its infringement contentions and conduct discovery to determine the viability of this theory. At the hearing, Plaintiff's counsel said that typically parties update infringement contentions after a *Markman* proceeding, and that it acted in good faith: "I have no intention, your Honor, of sandbagging people. ... All of this was done in good faith as a mechanism to try to address a couple of claim terms early for both sides, because it would be beneficial." (D.I. 79 at 56). The Court accepts that Plaintiff acted in good faith, and therefore, in the interest of justice, it will allow this argument proceed. Defendants' summary judgment argument with respect to the infringement testing theory, therefore, is denied.

### C. Nozzle Limitation

In the related *Markman* opinion, the Court construed nozzle as "a spout capable of being connected to the end of a pipe, hose, or tube, used to dispense fluid, and that can be inserted into

---

[9] Plaintiff further stated: "Given the advancement of the claim construction and summary judgment motions in the schedule, waiting for a claim construction ruling was not possible. Accordingly, Rydex supplemented and clarify[ied] its equivalents arguments in briefing (D.I. 54), once both the Parties' claim construction positions were understood." (D.I. 77 at 1).

13

a fluid container." Defendants argue that the accused medical devices do not have nozzles because the pumping components do not include a spout at the end of a pipe, hose or tube, do not dispense fluid, and cannot be inserted into a fluid container. (D.I. 48 at p. 17). Plaintiff responds that even under Defendants' construction the limitation is met under the doctrine of equivalents. (D.I. 54 at p. 17). Finally, Defendants also argue that the accused products do not have "input means" or "display means" on the "said nozzle." (D.I. 48 at p. 19).

It is challenging to determine specifically what Plaintiff is alleging is a nozzle in the accused products. Plaintiff states that "[e]ach device includes a short tube with a constriction used to direct a flow of fluid," which is consistent with Plaintiff's proposed construction. (D.I. 54 at 17). As Defendants demonstrate in their response, Plaintiff cannot merely call tubes and valves nozzles because a nozzle must be connected to a tube or a hose; it cannot be that intermediary tube, or a valve along that tube. (D.I. 59 at 8). Likewise, the nozzle must "dispense" fluid from the tube; it cannot merely pump fluid within the tube. (*Id*). Therefore, there is no evidence of literal infringement, because there is no spout, and the alleged nozzles are not dispensing liquid to a fluid container. Merely constricting or directing the flow is not enough to meet the literal limitation of "nozzle."

Plaintiff, however, is on stronger footing with its doctrine of equivalents arguments with respect to the nozzle.[10] Relying on expert testimony, Plaintiff argues that "the downstream plastic tubing in each device (heading to the container) is essentially a longer, thinner version of a 'spout.'" (D.I. 54 at 17). Subsequently, according to Plaintiff, the components perform substantially the same function, "controlling the flow of fluid through a narrowed section of a

---

[10] As with the infringement theories related to fluid container, there might be some concern about whether or not this doctrine of equivalents argument was previously alleged in the infringement contentions, though at the hearing, the parties seemed to say that was the case. (D.I. 75 at 61).

14

tube" in substantially the same way, "intervention by mechanical components to selectively prevent or facilitate fluid passing through the narrowed section" to achieve substantially the same result, "delivering a precise amount of fluid to a fluid container." (D.I. 54 at 18). Plaintiff has provided sufficient evidence to overcome the motion for summary judgment on this issue with respect to the doctrine of equivalents argument. Therefore, the Court denies Defendant's motion for summary judgment with respect to the doctrine of equivalents argument for the nozzle.

As for the arguments related to whether or not the products have an input or display means located on the nozzle, the Court finds that the literal infringement argument must fail for the same reasons it does for the nozzle limitation. Plaintiff has not identified nozzles in the products that meet the requirements of the Court's construction. Therefore, Defendants' argument with respect to this theory is granted.

However, Plaintiff does have a colorable argument under the doctrine of equivalents that the input and display means are located on a nozzle. Plaintiff, relying on its expert witness, argues that the input/display performs substantially the same function, "input and display of fluid transaction information to a user operating the nozzle," in substantially the same way, "providing a keypad or touchscreen and display screen in direct proximity to the nozzle," achieving the same result, "input and display of information to the user without the need for the user to turn or move away from the nozzle." (D.I. 54 at 20). Plaintiff has offered sufficient evidence to create a disputed material fact on this issue. Therefore, the Court denies summary judgment with respect to the doctrine of equivalents on the input and display means on the nozzle.

### III. Conclusion

15

For the reasons stated above, Defendants' Motion for Summary Judgment is granted in part and denied in part. Plaintiff may proceed against Haemonetics on a doctrine of equivalents theory, and against the other three defendants only on a doctrine of equivalents testing theory.

A separate order will be issued.